### John Chamberlin *versus* Cushing Shaw *et al.*

A farm and a certain number of sheep were leased, " to hold one year from the 1st of April, 1833, reserving 550 lbs. of wool of a quality of an average with the flock ;" and it was further stipulated in the lease, that the sheep should not be counted to the lessee till after shearing in June 1833, and that they should be counted back to the lessor after shearing in June 1834. The lessee sheared the sheep in June 1834, and sold the wool. In trover by the lessor against the lessee and his vendee, it was *held*, that from April to June, 1834, the lessee had neither the general nor special property in the sheep, nor the legal custody or possession, but that he had a right by implication to enter on the farm at a suitable time to shear them and count them out to the lessor ; that the general property in the sheep, and consequently in their wool, was in the lessor, and the implied stipulation, that the lessee should have all the wool over 550 lbs., was an executory contract, which vested no property in the lessee in any part of the wool before a separation of the 550 lbs. from the remainder, and as no separation had taken place at the time of the sale and of the lessor's demand of the wool, the property continued in the lessor ; that the measure of the plaintiff's damages was the value of the 550 lbs. at the time of the conversion ; that as the two defendants were together, and both in possession of the wool, and both refused to deliver it up on demand, there was a joint conversion which would sustain an action against them jointly; and that it was not necessary for the plaintiff to prove that the vendee had notice of the invalidity of the lessee's title.

Trover for 1000 lbs. of wool. Ebenezer T. Shaw, one of the defendants, was defaulted ; and the other, Cushing Shaw, pleaded the general issue, which was joined.

At the trial, before *Wilde* J., the plaintiff produced a lease, not under seal, by which he leased to Ebenezer T. Shaw, a farm in Windsor and 300 sheep, " to hold one year from the 1st of April, 1833, reserving 550 lbs. of wool of a quality of an average with the flock ; " and by the subsequent terms of the lease, it was agreed, that the sheep should not be counted to the lessee till after shearing in June 1833, and that they should be counted back to the plaintiff after shearing in June 1834, the lessee to make good any deficiency, and to take the risk of the sheep till they were so counted back. There was no provision made for rent other than is above set forth.

It appeared, that the farm was, until April 1833, in the tenancy of one Painter, who, by the terms of his lease, was to have one half of the wool of the sheep from the shearing of he summer of 1833 ; that the plaintiff and Painter had the wool of that shearing accordingly ; that the farm was leased to

one 'trough, from April 1, 1834, but that he was not to have   Chamberlin
the wool of the sheep till the shearing of 1835, the plaintiff         v.
and Ebenezer T. Shaw both saying to him, at the time of the        Shaw.
letting, that Ebenezer was to have the wool of the shearing of
1834, excepting 550 lbs. thereof, which he was to render to
the plaintiff for the rent of the previous year.

Ebenezer T. Shaw sheared the sheep in June 1834 ; and
there was evidence tending to show a sale of the wool by him
to Cushing Shaw.   While Cushing had the wool in his pos-
session, and was on the way with it, in company with Ebene-
zer, to his own residence, the agent of the plaintiff demanded
of them 550 lbs. of the wool, claiming it by virtue of the lease
from the plaintiff to Ebenezer ; but Cushing refused to give up
the wool.

The defendants contended, that, upon these facts, the plain-
tiff either had no property in the wool, or was a tenant in com-
mon with Ebenezer, and that in either case he could not pre-
vail in this suit ; but the judge, for the purposes of the trial,
ruled that the plaintiff could maintain the action for 550 lbs.
of the wool.

It appearing, that there was more than 550 lbs. of the wool
in the possession of Cushing, the plaintiff insisted, that he had
such a property in, or lien upon, the wool, that damages should
be assessed in his favor for the whole amount of the wool, in-
cluding the excess over 550 lbs.; but the judge ruled otherwise.

The jury assessed damages for the plaintiff at the sum of
$ 304·39.

The Court were to render judgment on the verdict, or
grant a new trial, or direct a nonsuit, according to the law.

Marsh, for the plaintiff, to the point, that if one tenant in   Sept 22d
common of a chattel sell it, an action of trover will lie against
him by his co-tenant, cited 3 Stark. on Evid. 1496, note ;
Wilson v. Reed, 3 Johns. R. 175 ; 2 Esp. Dig. 587.

Alvord, for the defendants.   The question is, whether, un-
der the lease, Ebenezer T. Shaw was entitled to the wool
sheared in 1833, or that sheared in 1834.   The lease is am-
biguous as to the year ; but as the sheep were not to be count-
ed to the lessee till after the shearing in 1833, and as the les-
see was to have the custody of the sheep, and *they were to be*

*at his risk,* till after the shearing in 1834, it follows, that he was to have the wool sheared in 1834. *M'Donald* v. *Hewett,* 15 Johns. R. 349. Although this was in terms a lease of both the farm and the sheep, commencing and ending on the 1st of April, still, taking into consideration all the terms of the lease, and also the circumstance, that a crop of wool, the growth of the preceding year, cannot be sheared till June, it may be sustained as a lease of the farm for a year commencing on the 1st of April, and as a lease of the sheep for a year commencing at the shearing in June.

We contend, that on the face of the lease, the wool sheared in 1834 was to go to the lessee; but if this does not appear on the face of the instrument, it is proved by the parol evi·dence, the lease itself not being conclusive as to strangers. 3 Stark. on Evid. 1051; *Overseers of New Berlin* v. *Overseers of Norwich,* 10 Johns. R. 229.

The plaintiff had no property in the 550 lbs. of wool, until it should be separated from the residue and delivered to him; and as no such separation was ever made, his right of property did not accrue. The defendant, by virtue of the lease, became owner of the sheep, with a special property, for the time being, and therefore he was the owner of the wool as the product thereof. The rent was not necessarily to be paid in the wool which should be taken from these sheep. *Newcomb* v. *Ramer,* 2 Johns. R. 421, note; *Stewart* v. *Doughty,* 9 Johns. R. 108; *Brainard* v. *Burton,* 5 Vermont R. 97; Bull. N. P. 85; *Butterfield* v. *Baker,* 5 Pick. 522; *Wait, Appellant,* 7 Pick. 100; *Young* v. *Austin,* 6 Pick. 280; *Merrill* v. *Hunnewell,* 13 Pick. 213; *Austin* v. *Craven,* 4 Taunt. 644; *White* v. *Wilks,* 5 Taunt. 176.

But if the plaintiff and the lessee were tenants in common, judgment must nevertheless be for the defendant, Cushing Shaw. Upon the question, whether the sale of a chattel held in common, by one of the tenants, is a conversion, the· decisions are contradictory. *Heath* v. *Hubbard,* 4 East, 128; *Oviatt* v. *Sage,* 7 Connect. R. 95; *Wilson* v. *Reed,* 3 Johns. R. 175; *Farr* v. *Smith,* 9 Wendell, 338; *Barton* v. *Williams,* 5 Barn. & Ald. 395. But it is agreed in all, that the purchaser is not guilty of conversion, and liable in trover to

the co-tenant, until he denies the right of the co-tenant. *Mersereau* v. *Norton*, 15 Johns. R. 179 ; *Pettingill* v. *Bartlett*, 1 New Hamp. R. 87. There was then no conversion by Cushing Shaw till he refused to give up the wool ; and if he succeeded to the rights of Ebenezer, there could have been no conversion by him, unless by a sale.

But suppose that there was a conversion by Cushing, it was not a *joint* conversion. The demand and refusal are only *evidence* of a conversion.

SHAW C. J. afterwards drew up the opinion of the Court. [After stating the facts.] It is to be regretted, that, in a case where the rights of the parties, in point of law, must depend upon the construction of the instrument of lease, where every clause and stipulation is important to determine the exact meaning of the parties, the instrument itself cannot be produced. But it unfortunately happens, without the fault of anybody, as far as appears, that neither of the two parts of the instrument can be found, and that we are obliged to decide upon such imperfect statement of the instrument, as the recollections of counsel can supply.

In the first place, it was contended, on the part of the defendant, that the plaintiff had no property in the wool, until the separation of the 550 lbs., and as no such separation was ever made, his right of property did not accrue. This leads us to the question, who was the general owner of the wool before separation. The general rule is not contested, that the owner of cattle or stock is, *primâ facie*, the owner of all the proceeds and profits and products thereof. But it was contended, that the defendant, by virtue of the lease, became owner, with a special property for the time being, and therefore he was the owner of the wool as its product. The first result of this argument would be, a claim to the wool, the product of the shearing of June 1833, because at that time he was lessee of the sheep. But it would be absurd to contend, that under a lease for one year he could claim two annual crops. But then it is contended, and this is the strongest view of the case for the defendant, that although this was in terms a lease of both the farm and sheep, commencing and ending with the 1st of April, yet taking the whole instrument together, and

Chamberlin
*v.*
Shaw.

taking also the well known physical fact, that a crop of wool, the growth of the preceding year, cannot, in our climate, be taken on the 1st of April, but must be postponed to June, it may be sustained as a lease of both for a year ; that of the farm to commence on the 1st of April, that of the sheep at the shearing in June.   But on consideration, this view seems not admissible ; the farm and the sheep are included in the same sentence, followed by the words " to hold for the term of one year."   Further, the lessee was to take charge and possession of the sheep, find and keep them from the 1st of April, and the owner and landlord was to resume the possession at the same period, the ensuing year.   The instrument is brief and does not go into details.   It would seem to be a very forced construction of it, to suppose that the sheep were to be kept anywhere else than on the farm thus let.   Then, if the farm was to be relinquished on the 1st of April, it follows inevitably, that the possession of the sheep was to be given up at the same time.   The provision, that the sheep were to be counted out to Shaw, after shearing in June, and by him back to the land-lord, after shearing the following June, if it stood alone, might countenance the construction contended for ; but controlled as it is, by other stipulations, and by the very explicit terms of the leasing clause, it may well enough be accounted for, on the supposition, that this was to fix the time at which the lessee's undertaking to bear the risk of the sheep was to com-mence and terminate.   We think then, that the relation in which Shaw stood to the sheep, from April to June, 1834, was this ; he had neither the general nor special property in them, nor the legal custody or possession, but he had a right by implication, to enter at a suitable time to shear them, and count them out to the owner, in discharge of his undertaking to be responsible for their number.   But having neither general nor special property, his entering under a right in nature of a license and shearing the sheep, would not make the wool his property ; that would follow the ownership in the sheep which produced it.

It may be asked, how Shaw was to hold any property in the wool.   Amongst the express terms of the instrument, there is no provision that he shall have any of the wool ; but there is

such a right by necessary implication. The stipulation, that the landlord is to have 550 lbs. of the wool, and, as we think, of the wool of that flock, carries a strong implication, that the lessee, who had kept the sheep through the greater part of the year, within which the wool was growing, should have the remainder ; and as a necessary incident, that he should have a right to enter and shear the sheep. The implied stipulation on the part of the landlord, that the lessee should have all the wool over 550 _bs., was an executory contract, that would vest no property in the lessee, in any part of the wool, until some further act to be done, and that act in the present case was the separation of the 550 lbs. from the remainder.

The Court are, therefore, of opinion, that at the time of the shearing the general property in the whole of the wool was in the plaintiff, and as no separation had taken place, it remained in him at the time of the conversion.

It is then asked, if the plaintiff was the owner of the whole at the time of the conversion, why the damages should not have been assessed for the whole amount.

In an action of trover, though the plaintiff's possession of the property has been violated, he waives all claim to damages on account of that violation, and seeks an indemnity only for the loss of his property. Hence it is, that the value of the property at the time of the conversion is *primâ facie* the measure of damages. Now if the case is so situated, that the plaintiff can be indemnified by a sum of money less than the full value, there seems to be no reason why it should not be done, as where the plaintiff has a special property, subject to which the defendant is entitled to the goods. For instance, a factor has a lien on goods to half their value. The principal becomes bankrupt, and the property vests in his assignees, subject of course to all legal liens. The assignees denying and intending to contest the factor's lien, get possession of the goods and convert them. The factor brings trover, establishes his lien and recovers. How shall damages be assessed ? If he recover the full value of the goods, he will be responsible directly back to the defendants themselves for a moiety of the value. To avoid circuity of action, why should not damages be assessed to the amount of his lien ? He is fully indemnified,

the balance of the value is in the hands of those entitled to it, and the whole controversy is settled in one suit. If the plaintiff is responsible over to a third person, or if for any cause, the defendant is not entitled to the balance of the value, a very different rule would prevail, and justice would require that the whole value of the property should be assessed to the plaintiff. *Green* v. *Farmer*, 4 Burr. 2214. This is such a case ; on a severance, the defendant, Ebenezer T. Shaw, would have been entitled to all over 550 lbs., and he transferred his right and interest to the other defendant. The plaintiff is indemnified by a recovery to the value of his 550 lbs., and he will be responsible over to no other person. We think, therefore, there is no reason to disturb the assessment of damages.

It was, however, contended, that the plaintiff could not recover in this joint action, because there was no joint conversion ; but the evidence shows a sufficient joint conversion. The defendants were both together, and both in possession of the wool, and both refused to deliver the wool on demand. It is admitted by one by his default, and it is proved against the other by the evidence. Nor was it necessary to show that the defendant, Cushing Shaw, had any notice of the invalidity of the title of the other defendant. The plaintiff having proved his property, and shown a demand and refusal, which is evidence of conversion, has established his case. The defendant, Ebenezer T. Shaw, had no property in himself, and so far from having any power or authority from the plaintiff, the evidence strongly tends to show, that his attempt to sell the whole was a manifest fraud on the plaintiff. Having neither title in him, nor power from the owner, his contract of sale could confer no title on the vendee.